**MCMANIMON SCOTLAND & BAUMANN, LLC**
Eric E. Tomaszewski, Esq. (NJ Attorney ID No. 041452004)
Jessica CM Almeida, Esq. (NJ Attorney ID No. 058132013)
75 Livingston Avenue
Roseland, New Jersey 07068
(973)622-1800
*Attorneys for Plaintiff 1001 Newark Ave. Associates, LLC*

| | |
|---|---|
| 1001 Newark Ave. Associates, LLC, <br><br> Plaintiff, <br><br> v. <br><br> General Spray Drying Services, Inc.; Fabvan Sales Company (d/b/a General Spray Drying); Clifford S. Brucker, E.I. DuPont de Nemours & Company, DuPont de Nemours, Inc. (f/k/a DowDuPont, Inc.); Corteva, Inc.; The Chemours Company; The Chemours Company FC, LLC, and John Does 1- 10 (fictitious entities). <br><br> Defendants. | UNITED STATES DISTRICT COURT <br> DISTRICT OF NEW JERSEY |

## INTRODUCTION

1.      1001 Newark Ave. Associates LLC ("**1001 Newark**") brings this action as it relates to certain contamination of its property designated as Block 11, Lot 848 on the Official Tax Maps of the City of Elizabeth, New Jersey, more commonly known as 1001 Newark Avenue in Elizabeth, New Jersey (the "**Property**") with per- and polyfluoroalkyl substances ("**PFAS**"), a family of chemical compounds that includes perfluorooctanoic acid ("**PFOA**"), perfluorononanoic acid ("**PFNA**"), and perfluorooctane sulfonic acid ("**PFOS**").

2.      Upon information and belief, at various times from the 1950s through today, Defendants E.I. du Pont de Nemours & Company ("**DuPont**"), DuPont de Nemours, Inc. ("**New**

DuPont"), Corteva, Inc. ("**Corteva**"), The Chemours Company ("**Chemours**"), The Chemours Company FC, LLC ("**Chemours FC**") (collectively the "**DuPont Defendants**") developed, manufactured, formulated, distributed, sold, transported, stored, loaded, mixed, applied, and/or used PFAS alone or in end products that contain PFAS as an active ingredient, byproduct, or degradation product (collectively referred to as "**Defendants' PFAS**").

3.    Upon information and belief, beginning in 2003 and continuing until 2008, Defendant General Spray Drying Service, Inc. ("**General Spray**") did conduct certain processing operations with respect to the Defendants' PFAS upon 1001 Newark's Property, pursuant to a lease agreement with 1001 Newark.

4.    General Spray's processing operations resulted in discharges of Defendants' PFAS upon or into 1001 Newark's Property, which contaminated the soil and groundwater beneath surface of same.

5.    1001 Newark brings this action seeking: (a) recovery of costs incurred related to the investigation and remediation of Defendants' PFAS on, beneath, or migrating from the Property, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("**CERCLA**"), 42 U.S.C. §9601 *et seq*.; (b) recovery of costs incurred related to the investigation and remediation of Defendants' PFAS on, beneath, or migrating from the Property, pursuant to the New Jersey Spill Compensation and Control Act (the "**Spill Act**"), N.J.S.A. 58:10-23.11*, et seq.*; (c) declaratory judgment that General Spray and the DuPont Defendants are joint and severally liable for all future costs associated with the investigation and remediation of Defendants' PFAS on, beneath, or migrating from the Property, pursuant to CERCLA; (d) declaratory judgment that General Spray, Defendant Clifford S. Brucker ("**Defendant Brucker**"), and the DuPont Defendants are jointly and severally liable for all future costs associated with the

investigation and remediation of Defendants PFAS on, beneath or migrating from the Property, pursuant to the Spill Act; (e) declaratory judgment that General Spray is liable for all costs associated with the investigation and remediation of Defendants PFAS on, beneath or migrating from the Property pursuant to its lease agreement with 1001 Newark, including attorneys' fees and costs; (f) a determination that General Spray has breached its Contract with 1001 Newark and is responsible for all damages, costs, and fees associated with the enforcement of the lease between the Parties; and (e) a determination that General Spray has clearly and definitively repudiated the lease covenants regarding the investigation and remediation of PFAS contamination on, beneath or migrating from the Property, resulting in an anticipatory breach of the lease between the parties.

## JURISDICTION AND VENUE

6. This Court has exclusive jurisdiction over 1001 Newark's CERCLA claims, pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201 and 42 U.S.C. § 9613, and its claim for entry of a declaratory judgment under 28 U.S.C. §§ 2201 and 2202, as well as 42 U.S.C. § 9613.

7. Venue is proper in this District pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b) because the threatened and actual releases of hazardous substances that give rise to this action occurred and/or are occurring in this District and the Property is located in this District.

8. This Court has supplemental jurisdiction over 1001 Newark's state law claims for relief under the Spill Act and the New Jersey Declaratory Judgment Act, N.J.S.A. §2A-16-50 ("**NJ Declaratory Judgment Act**") pursuant to 28 U.S.C. § 1367(a) and for 1001 Newark's claim for anticipatory breach of contract for the additional reason that those claims are joined with substantially related claims and arise out of the same common nucleus of operative facts as 1001 Newark's federal law claims.

## THE PARTIES

9.      1001 Newark is a New Jersey corporation, with an address of 1000 South Elmore Avenue, Elizabeth, New Jersey 07202 and is the successor in interest with respect to the Property of Don Ackerman and Economy Color Card Co. Inc. (collectively referred to herein as "**1001 Newark**").

10.     Upon information and belief, General Spray is a New Jersey corporation, with an address of 1 Ledgewood Court, Warren, New Jersey 07059 and is the successor in interest to Fabvan Sales Company (d/b/a General Spray Drying) (collectively referred to herein as "**General Spray**").

11.     Upon information and belief, Defendant Brucker was the President of General Spray at all times relevant to this litigation.

12.     Upon information and belief, DuPont is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

13.     Upon information and belief, New Dupont is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont. DowDuPont, Inc. was subsequently divided into three publicly traded companies, and on June 1, 2019, DowDuPont, Inc. changed its registered name to DuPont de Nemours, Inc. ("**New DuPont**").

14.     Upon information and belief, Corteva is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805. Corteva is one of the aforementioned spin-off companies from DowDuPont, Inc.,

and assumed some of the PFAS liabilities of the former DuPont. Corteva was originally formed in February 2018. From that time until June 1, 2019, Corteva was a wholly-owned subsidiary of New Dupont (then known as DowDuPont, Inc.).

15.    Upon information and belief, Chemours is a corporation under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, P.O. Box 2047, Wilmington, Delaware, 19899.

16.    Upon information and belief, Chemours FC is a limited liability company organized under the laws of the State of Delaware. Chemours FC has only one member, which is Chemours, and has a principal place of business located at 1007 Market Street, P.O. Box 2047, Wilmington, Delaware, 19899. Chemours FC is the successor in interest to DuPont Chemical Solutions Enterprise.

17.    John Does 1 – 10 are fictitious entities who contributed to the PFAS contamination of the Property and are liable for same.

**GENERAL SPRAY'S TENANCY AND OPERATIONS AT THE PROPERTY**

18.    General Spray began operating on a portion of the Property (the "**Premises**") in 1970 and continued to do so until approximately September 2018, when General Spray sold its operations to General Spray Services, LLC.

19.    On April 1, 1996, 1001 Newark and General Spray entered into a lease for the Premises, effective and ending in March 2001 (the "**1996 Lease**").

20.    On August 18, 1996, 1001 Newark and General Spray executed an addendum to the 1996 Lease, altering its terms to commence on September 1, 1996, and amending certain other terms ("**Lease Amendment**", collectively with the 1996 Lease, the "**First Lease Amendment**").

21.    The First Lease Amendment contained, at ¶46, a clause that the General Spray, "shall be responsible to obtain from the New Jersey Department of Environmental Protection (hereinafter referred to as the "**NJDEP**") any clearances or negative declarations that may be required pursuant to the Environmental Cleanup Responsibility Act, N.J.S.A. 13:1K-6 *et seq.* [subsequently amended and renamed as the Industrial Site Recovery Act ("**ISRA**")] at the expiration of the term of this Lease.  Any costs incurred in obtaining said negative declarations from DEP or costs of a cleanup plan proposed or directed by DEP pursuant to [ISRA] shall be borne solely by Tenant.  Tenant covenants and agrees that it shall take all steps that may be required both by DEP and [ISRA] to obtain a negative declaration or approval of a cleanup plan immediately upon any notice that the same is required."

22.    The First Lease Amendment further states that "if any fines and/or other costs are imposed against Landlord by DEP, pursuant to the [ISRA], Tenant covenants and agrees to indemnify and hold harmless Landlord from and against any and all said fines and/or other costs, together with reasonable counsel fees that may be incurred by Landlord relating thereto".

23.    The First Lease Amendment further states that "Tenant shall be responsible for any costs incurred by Landlord in performing the required cleanup by DEP and [ISRA]. This representation and indemnification shall survive the term of this Lease."

24.    Upon information and belief, General Spray's operations on the Premises involved contract work for customers turning suspensions, emulsions and non-flowable powders into flowable powder products.

25.    Upon information and belief, the General Spray Premises had two process areas containing mixing and drying chambers, including one in the southeast portion of the leasehold

used to dry bake products and a second process area located inside a large concrete silo within the southern portion of the Premises.

26.　　Upon information and belief, General Spray received materials from customers as dry solids, emulsions, and suspensions, which were then dry-mixed or mixed with water.

27.　　Upon information and belief, wet mixed materials were pumped from a concrete vault below floor level, through overhead piping, to a drying chamber/silo, and then sprayed into the chamber from which they fall out as flowable powders, which were then heat dried by combustion of natural gas.

28.　　Upon information and belief, the finished powder product was then packaged and returned to General Spray's customers.

29.　　Upon information and belief, General Spray's processing equipment was cleaned by pressure-washing the equipment with water, which drained to a sump located at the corner of the sub-floor concrete vaults.

30.　　Upon information and belief, General Spray sold its operations at the Property to General Spray Services, LLC in September 2018 for approximately three million dollars ($3,000,000).

31.　　Upon information and belief, the proceeds from the sale of General Spray's operations at the Property have been disbursed, in whole or in part, to Defendant Bruckner and/or John Does 1-10.

### DuPONT'S PFAS BUSINESS

32.　　In 2015, Defendant DuPont spun off its "Performance Chemicals" business to Defendant Chemours, along with vast environmental liabilities which Defendant Chemours assumed, including those related to Defendant DuPont's PFAS, which included PFOA. At the time

of the transfer of its Performance Chemicals business to Defendant Chemours, Defendant DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding Defendant DuPont's liability for damages and injuries arising from its development, manufacture, formulation, distribution, sale, transportation, storage, loading, mixing, application and/or use of PFAS alone or in products that contain PFAS as an active ingredient, byproduct or degradation product.

33.     Defendant Chemours was incorporated as a subsidiary of Defendant DuPont as of April 30, 2015. From that time until July 2015, Defendant Chemours was a wholly-owned subsidiary of Defendant DuPont.

34.     In July 2015, Defendant DuPont distributed shares of Defendant Chemours' stock to Defendant DuPont stockholders, and Defendant Chemours has since been an independent, publicly-traded company.

35.     On June 1, 2019, Defendant New Dupont (then known as DowDuPont, Inc.) separated its agriculture business through the spin-off of Defendant Corteva. In so doing, and through a series of stock transfers/distributions, Defendant Corteva became the direct parent of Defendant DuPont, and holds certain assets and liabilities of Defendant New Dupont, including its agriculture and nutritional businesses.

36.     On June 1, 2019, Defendant New Dupont (then known as DowDuPont, Inc.), the surviving entity after the spin-off of Defendant Corteva and of another entity known as Dow, Inc., changed its name to DuPont de Nemours, Inc. Defendant New DuPont retained assets in the specialty products business lines following the above-described spin-offs, as well as the balance of the financial assets and liabilities of Defendant DuPont not assumed by Defendant Corteva.

37.    At various times from the 1950s through today, Defendants developed, manufactured, formulated, distributed, sold, transported, stored, loaded, mixed, applied and/or used Defendants' PFAS.

## GENERAL SPRAY'S PROCESSING OPERATIONS ON BEHALF OF DuPONT

38.    Upon information and belief, DuPont was a customer of General Spray from approximately February 2003 until August 2008.

39.    Upon information and belief, during that period of time, DuPont provided General Spray with a PFAS emulsion product upon which General Spray conducted its processing operations to return a dried PFAS powder back to DuPont.

40.    Upon information and belief, at all times, the PFAS materials provided by DuPont to General Spray remained the sole property of DuPont at all times from delivery to General Spray to return to DuPont.

## GENERAL SPRAY'S ISRA OBLIGATIONS

41.    General Spray's sale of its business to the General Spray Services, LLC in 2018 triggered ISRA, and General Spray filed a General Information Notice with the NJDEP in compliance with ISRA on August 7, 2018.

42.    NJDEP assigned General Spray with ISRA Case No. E2018170876 and Program Interest Number 020243 (the "**General Spray ISRA Case**").

43.    In compliance with its ISRA obligation, General Spray submitted a Preliminary Assessment Report ("**PAR**"), prepared by Prestige Environmental Inc. ("**PEI**"), dated January 15, 2020, to NJDEP, which PAR did not identify any concerns requiring further investigation and, subsequently, General Spray's Licensed Site Remediation Professional ("**LSRP**") issued a Response Action Outcome ("**RAO**") on February 20, 2020.

44.     Among other things, PEI's PAR identified fugitive dust emissions at the Premises and groundwater infiltration into concrete sumps used by General Spray.

45.     On or before November 4, 2020, Landlord's environmental consultant, formerly JM Sorge, Inc. ("**JMS**") (now Verdantas) conducted a review of General Spray's PAR and RAO and concluded that General Spray had failed to conduct a Site Investigation for PFOA related compounds in accordance with the NJDEP regulations, which was required due to General Spray's operations involving PFOA-related compounds at the Premises.

46.     On December 15, 2020, JMS conducted, at 1001 Newark's cost, a preliminary groundwater investigation in existing wells located in the vicinity of General Spray's loading dock and dumpster leasehold area, which revealed the presence of PFOA, PFNA, and PFOS compounds greater than applicable NJDEP standards.

47.     1001 Newark shared the results of JMS' PFAS investigation with General Spray and, on March 30, 2021, made a formal demand that General Spray reimburse 1001 Newark's costs incurred to date, withdraw the previously issued RAO, and conduct a full investigation and remediation for the PFAS contamination in compliance with NJDEP regulations (the "**PFAS Demand**").

48.     On December 3, 2021, General Spray notified the NJDEP Spill Hotline of the PFAS groundwater contamination and requested that the spill notification be referenced to the General Spray ISRA Case.

49.     On December 14, 2021, General Spray's LSRP submitted a LSRP retention and Confirmed Discharge Notification to NJDEP with respect to the PFAS groundwater contamination under the General Spray ISRA Case.

50.     On January 31, 2022, General Spray submitted a Remediation Trust Fund Agreement to NJDEP, which specified the establishment of a cash-based remediation funding source of $250,000 – representing the NJDEP's surrogate (i.e., default) amount when known groundwater contamination is present.

51.     Upon information and belief, in or about 2022, PEI further evaluated PFAS impacts on, beneath or migrating from the Property.

52.     Upon information and belief, PEI specifically evaluated General Spray's floor drains, pits, sumps, trenches, loading docks and powder storage / handling areas.

53.     Upon information and believe, the highest levels of PFAS contamination identified on the Property were downgradient from General Spray's main flowable powder production silo.

54.     The General Spray ISRA Case currently has a Remedial Investigation Regulatory Timeframe of November 3, 2027 and a Remedial Action Regulatory Timeframe of November 3, 2034.

55.     Upon information and belief, since 2022, General Spray has not undertaken any actions to further the investigation and remediation of the PFAS contamination or to establish a site-specific cost estimate to replace the NJDEP's default amount required for the remediation trust fund.

56.     Since receiving 1001 Newark's PFAS Demand, General Spray has twice changed LSRPs for the General Spray ISRA Case.

57.     The New Jersey Site Remediation Professional Licensing Board has, on three (3) separate occasions since October 4, 2018, determined that General Spray's current LSRP, David Pry ("**LSRP Pry**"), violated applicable rules and regulations on over thirty (30) different occasions dating back to 2016.

58.     Seventeen (17) of LSRP Pry's administrative violations have stemmed from the failure to meet applicable investigation or remediation timeframes and his failure to notify the NJDEP when such timeframes had not been met.

59.     On May 9, 2024, General Spray served a demand letter upon the DuPont Defendants alleging that the DuPont Defendants were potentially responsible for the PFAS contamination at the Property and demanding that they contribute towards the investigation and remediation of same.

60.     Upon information and belief, the DuPont Defendants have not agreed to contribute towards the investigation or remediation of the PFAS contamination at the Property.

61.     Beginning in September 2024, General Spray and 1001 Newark (through their respective counsel) began to discuss General Spray's demand upon DuPont and the possibility of jointly pursuing legal action against DuPont for the PFAS contamination at the Property.

62.     As a condition of such proposed cooperation, 1001 Newark demanded that General Spray agree in writing to: (a) re-confirm its obligation to investigate and remediate the PFAS contamination as part of the General Spray ISRA Case pursuant to the First Lease Amendment; (b) increase its cash-based remediation funding source from $250,000 to $750,000[1]; and (c) perform the investigation of the PFAS contamination at the Property pursuant to a detailed schedule of activities and deliverables culminating in submission of a Remedial Investigation Report in compliance with the November 3, 2027 Remedial Investigation Regulatory Timeframe.

63.     General Spray rejected 1001 Newark's demand and offered no counter-proposal.

---

[1] 1001 Newark's environmental consultant, Verdantas, currently estimates the cost to investigate and remediate the PFAS contamination at the Property at $2,405,000.

## INABILITY TO SELL PROPERTY DUE TO CONTAMINATION

64.     In or about February 2024, 1001 Newark entered negotiations to sell the Property to a third-party, Elberton Development Group LLC, for a proposed sale price of $4,500,000.

65.     As part of the negotiations, 1001 Newark disclosed all information in its possession regarding the General Spray's former tenancy, the sale of General Spray's operations at the Property, and the General Spray ISRA Case, including the PFAS contamination.

66.     On or about July 9, 2024, Elberton broke off all negotiations for purchasing the Property.

67.     Upon information and belief, Elberton's decision to break off the negotiations was premised on General Spray's sale of its operations, slow progress investigating the PFAS contamination as part of the General Spray ISRA Case, and the low, default-level remediation trust fund for the confirmed PFAS groundwater contamination when compared to the reasonably anticipated costs of same.

## COUNT ONE
### Cost Recovery, CERCLA § 107(a) (42 U.S.C. § 9607(a))
### (As to General Spray and DuPont Defendants)

68.     1001 Newark realleges and incorporates by reference Paragraph Nos. 1 through 67 of this Complaint as if fully restated herein.

69.     1001 Newark brings this action under CERCLA § 107(a) (42 U.S.C. § 9607(a)), which permits a private cause of action to allow parties to recover all or part of their cleanup costs from potentially responsible parties.

70.     General Spray and the DuPont Defendants are each individually a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

71.     The Property is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

72.     The DuPont Defendants arranged for the disposal or treatment of hazardous substances at the Property, as described by Section 104(a)(1)(B) of CERCLA, 42 U.S.C. § 9607(a)(3).

73.     General Spray operated a facility at the property at which hazardous substances were disposed of, as described by Section 104(a)(1)(B) of CERCLA, 42 U.S.C. § 9607(a)(3).

74.     The waste disposed by General Spray and the DuPont Defendants on the site consists of "hazardous substances" as defined by Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

75.     Hazardous substances have been released or are threatened to be released into the environment from the Property, which have contaminated or will contaminate the environment, including soils and groundwater, within the meaning of CERCLA, 42 U.S.C. §§ 9601(8), 9601(14) and 9601(22).

76.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

> (a)     Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –
> * * * *
> (3)     any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances owned or possessed by such person . . . shall be liable for . . .
> * * * *
> (B)     any other necessary costs of response incurred by any other person consistent with the national contingency plan . . . .

77.     General Spray and the DuPont Defendants arranged for disposal or treatment of hazardous substances owned or possessed by DuPont at the Property.

78.    A release and/or threatened release of hazardous substances at, under, migrating from, and around the Property has caused and/or will cause 1001 Newark to incur response costs, within the meaning of CERCLA, 42 U.S.C. § 9601(25), involving work associated with of PFOA, PFNA, and PFOS compounds greater than applicable NJDEP standards found at the Property.

79.    General Spray and the DuPont Defendants are liable jointly and severally to 1001 Newark pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), for all such necessary response costs regarding the remediation of the hazardous compounds incurred and to be incurred, including but not limited to, reasonable attorneys' fees and prejudgment interest.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in its favor and against Defendants General Spray and the DuPont Defendants as follows:

(a)    enter judgment pursuant to § 107(a) of CERCLA (42 U.S.C. § 9607(a)), in favor of 1001 Newark and against General Spray and the DuPont Defendants, holding General Spray and the DuPont Defendants liable for its fair and equitable share of the necessary costs of response and damages incurred and to be incurred by 1001 Newark, including reasonable attorneys' fees and pre-judgment interest; and

(b)    awarding Plaintiff interest, costs of this action, including reasonable attorneys' fees to the extent permitted by law, and such other, and further relief as the Court determines is just, equitable and appropriate.

## COUNT TWO
### Contribution, CERCLA § 113 (42 U.S.C. § 9613)
### (As to General Spray and DuPont Defendants)

80.    1001 Newark realleges and incorporates by reference Paragraph Nos. 1 through 79 of this Complaint as if fully restated herein.

81.     Sections 113(f)(1) and (3)(B) of CERCLA, 42 U.S.C. §§ 9613(f)(1) and (3)(B), provide, in relevant part, that:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) . . . .
>
> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement . . . .

82.     A release and/or threatened release of hazardous substances on the Property has caused and will cause 1001 Newark to incur response costs, within the meaning of CERCLA, 42 U.S.C. § 9601(25), regarding the remediation of the hazardous compounds.

83.     The DuPont Defendants are a liable party under CERCLA but has not resolved any of its liability to 1001 Newark.

84.     1001 Newark is entitled to contribution from the DuPont Defendants under Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), for their equitable share of costs and damages incurred and to be incurred by 1001 Newark regarding the remediation of the hazardous substances on the Property, including but not limited to, reasonable attorneys' fees and prejudgment interest.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in its favor and against Defendants General Spray and the DuPont Defendants as follows:

(a)     enter judgment pursuant to §§113(f)(1) and (3)(B) of CERCLA, 42 U.S.C. §§ 9613(f)(1) and (3)(B), in favor of 1001 Newark and against General Spray and the DuPont Defendants, holding General Spray and the DuPont Defendants liable for its fair and equitable share of the necessary costs of response and damages incurred and to be incurred by 1001 Newark, including reasonable attorneys' fees and pre-judgment interest; and

(b)     awarding Plaintiff interest, costs of this action, including reasonable attorneys' fees to the extent permitted by law, and such other, and further relief as the Court determines is just, equitable and appropriate.

## COUNT THREE
### Declaratory Judgment, CERCLA § 113(g)(2) (42 U.S.C. § 9613(g)(2)
### (As to General Spray and DuPont Defendants)

85.     1001 Newark realleges and incorporates by reference Paragraph Nos. 1 through 84 of this Complaint as if fully restated herein.

86.     General Spray and the DuPont Defendants are each individually a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

87.     The Property is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

88.     The DuPont Defendants arranged for the disposal or treatment of hazardous substances at the Property, as described by Section 104(a)(1)(B) of CERCLA, 42 U.S.C. § 9607(a)(3).

89.     General Spray operated a facility at the property at which hazardous substances were disposed of, as described by Section 104(a)(1)(B) of CERCLA, 42 U.S.C. § 9607(a)(3).

90.     The waste disposed by General Spray and the DuPont Defendants on the site consists of "hazardous substances" as defined by Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

91.     Hazardous substances have been released or are threatened to be released into the environment from the Property, which have contaminated or will contaminate the environment, including soils and groundwater, within the meaning of CERCLA, 42 U.S.C. §§ 9601(8), 9601(14) and 9601(22).

92.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

(a)     Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –

* * * *

(3)     any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances owned or possessed by such person . . . shall be liable for . . .

* * * *

(B)     any other necessary costs of response incurred by any other person consistent with the national contingency plan . . . .

93.     A release and/or threatened release of hazardous substances at, under, or migrating from the Property that may cause 1001 Newark to incur response costs, within the meaning of CERCLA, 42 U.S.C. § 9601(25), involving work associated with of PFOA, PFNA, and PFOS compounds greater than applicable NJDEP standards has been found at the Property.

94.     General Spray and the DuPont Defendants are liable jointly and severally to 1001 Newark pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), for all such necessary response costs regarding the remediation of the hazardous compounds incurred and to be incurred, including but not limited to, reasonable attorneys' fees and prejudgment interest.

95.     There is a present and actual controversy between 1001 Newark, General Spray, and the DuPont Defendants concerning their respective rights and obligations regarding the remediation of the hazardous substances associated with the Property.

96.     Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides, in relevant part, that:

In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions

under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action. Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

97.    1001 Newark seeks a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), against General Spray and the DuPont Defendants, holding them liable for all future response costs and damages associated with the Property, which will be binding in any subsequent action to recover further response costs.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in its favor and against Defendants General Spray and the DuPont Defendants as follows:

(a)    enter judgment pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), in favor of 1001 Newark and against General Spray and the DuPont Defendants, holding General Spray and the DuPont Defendants liable for its fair and equitable share of the necessary costs of response and damages incurred and to be incurred by 1001 Newark, including reasonable attorneys' fees and pre-judgment interest; and

(b)    awarding Plaintiff interest, costs of this action, including reasonable attorneys' fees to the extent permitted by law, and such other, and further relief as the Court determines is just, equitable and appropriate.

**COUNT FOUR**
**Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202)**
**(As to General Spray and DuPont Defendants)**

98.    1001 Newark realleges and incorporates by reference Paragraph Nos. 1 through 97 of this Complaint as if fully restated herein.

99.    There is a present and actual controversy between 1001 Newark, General Spray and the DuPont Defendants concerning their respective rights and obligations regarding all response costs in connection with the Property.

100.    1001 Newark seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring 1001 Newark's rights against General Spray and the DuPont Defendants pursuant to CERCLA with respect to all past and future response costs involving the Property.

101.    1001 Newark is entitled to a declaratory judgment against General Spray and the DuPont Defendants holding them liable for all future response costs associated with the Property under Section 113(g)(2) of CERCLA, as well as all past and future response costs incurred and to be incurred in connection with the Property, pursuant to 28 U.S.C.§§ 2201 and 2202.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in its favor and against Defendants General Spray and the DuPont Defendants as follows:

(a)    enter judgment pursuant to 28 U.S.C. §§ 2201 and 2202 in favor of 1001 Newark and against General Spray and the DuPont Defendants, holding General Spray and the DuPont Defendants liable for its fair and equitable share of the necessary costs of response and damages to the extent incurred by 1001 Newark, including reasonable attorneys' fees and pre-judgment interest; and

(b)    awarding Plaintiff interest, costs of this action, including reasonable attorneys' fees to the extent permitted by law, and such other, and further relief as the Court determines is just, equitable and appropriate.

## COUNT FIVE
### Cost Recovery, Spill Act N.J.S.A. § 58:10-23.11g(c)(1)
### (As to General Spray and DuPont Defendants)

102.    1001 Newark realleges and incorporates by reference Paragraph Nos. 1 through 101 of this Complaint as if fully restated herein.

103.    General Spray and the DuPont Defendants are a person within the meaning of the New Jersey Spill Compensation and Control Act N.J.S.A. 58:10-23.11 et seq. (the "Spill Act").

104.    91.    "Hazardous Substances" within the meaning of the Spill Act, N.J.S.A. § 58:10-23.11b, have been discharged by General Spray and the DuPont Defendants at the Property.

105.    General Spray and the DuPont Defendants are a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of Spill Act, N.J.S.A. §58:10-23.11f(a)(2)(a).

106.    Pursuant to the Spill Act, N.J.S.A. 58:10-23.11g(c)(1), General Spray and the DuPont Defendants are strictly, jointly and severally liable, without regard to fault, for all cleanup and removal costs incurred and to be incurred by 1001 Newark because they are a person "who has discharged a hazardous substance" and/or is "in any way responsible for a hazardous substance" at the Property.

107.    As a result of the discharge of hazardous substances for which General Spray and the DuPont Defendants are liable under the Spill Act, 1001 Newark has incurred and will continue to incur cleanup and removal costs within the meaning of the Spill Act, N.J.S.A. 58:10-23.11b, for testing, investigation, removal, and remediation of these discharges.

108.    Pursuant to the Spill Act, General Spray and the DuPont Defendants are liable jointly and severally to 1001 Newark pursuant to N.J.S.A. 58:10-23.11g(c)(1) for all cleanup and removal costs incurred and to be incurred in connection with the Property.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in its favor and against Defendants General Spray and the DuPont Defendants as follows:

(a)    enter judgment pursuant to <u>N.J.S.A.</u> § 58:10-23.11g(c)(1), in favor of 1001 Newark and against General Spray and the DuPont Defendants, holding General Spray and the DuPont Defendants liable for its fair and equitable share of the necessary costs of response and damages incurred and to be incurred by 1001 Newark, including reasonable attorneys' fees and pre-judgment interest; and; and

(b)    awarding Plaintiff interest, costs of this action, including reasonable attorneys' fees to the extent permitted by law, and such other, and further relief as the Court determines is just, equitable and appropriate.

**COUNT SIX**
**Anticipatory Breach**
**(As to General Spray)**

109.    1001 Newark realleges and incorporates by reference Paragraph Nos. 1 through 108 of this Complaint as if fully restated herein.

110.    1001 Newark and General Spray entered a valid and binding contract, the First Lease Amendment, which was negotiated by the parties and signed by both Parties.

111.    1001 Newark performed under the First Lease Amendment and performed all obligations it was required to under the First Lease Amendment.

112.    The First Lease Amendment mandates that General Spray is solely responsible for all costs of implementing any necessary cleanup required to obtain ISRA clearance.

113.    When pursing the General Spray ISRA Case, General Spray initially failed to identify PFAS as a contaminant requiring investigation and/or remediation.

114.    Only after 1001 Newark identified PFAS contamination attributable to the tenancy, did General Spray incorporate PFAS into the General Spray ISRA Case and retain a LSRP to further investigate and remediate such contamination.

115.    Since 2022, however, General Spray has not performed any relevant PFAS investigation work and has changed LSRPs multiple times.

116.    General Spray's current LSRP has a verified professional record of failing to conduct site investigation and remediation work in accordance with NJDEP mandated timeframes.

117.    General Spray's failure to advance the investigation of PFAS at the Property has allowed it to maintain only the default-level remediation funding source for groundwater remediation when sufficient information already exists to estimate investigation and remediation costs far in excess of that amount.

118.    Most recently, 1001 Newark demanded General Spray: (a) confirm its contractual obligations to investigate and remediate the PFAS contamination as part of the General Spray ISRA Case in writing; (b) establish a more realistic remediation trust fund with the NJDEP; and (c) provide a detailed schedule for the performance of the PFAS-investigation work that would allow it to meet the existing Remedial Investigation Regulatory Timeframe of November 3, 2027.

119.    General Spray refused 1001 Newark's demand and failed to offer any counter-offer.

120.    A failure to investigate and remediate the PFAS contamination at the Property pursuant to ISRA would represent a material breach of the First Lease Amendment.

121.    General Spray's failure to meaningfully conduct the PFAS investigation since 2022, its hiring of a LSRP with a verified professional record of delinquency, and its refusal to provide adequate assurances in response to 1001 Newark's demand has definitely and clearly indicated that it will not perform the required PFAS investigation or remediation at the Property, which

represents an anticipatory breach of the First Lease Amendment and General Spray's obligation to investigate and remediate the Property in accordance with ISRA.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in its favor and against Defendants General Spray as follows:

a.      Enter a judgment against General Spray, finding General Spray has repudiated the contract definitely and clearly, as confirmed through their actions and 1001 Newark has already performed under the contract, and their actions have caused and will cause Plaintiff damages; and

b.      awarding Plaintiff interest, costs of this action, including reasonable attorneys' fees to the extent permitted by law, and such other, and further relief as the Court determines is just, equitable and appropriate.

**COUNT SEVEN**
**Breach of Contract**
**(As to General Spray)**

122.    1001 Newark realleges and incorporates by reference Paragraph Nos. 1 through 121 of this Complaint as if fully restated herein.

123.    1001 Newark and General Spray entered a valid and binding contract, the First Lease Amendment, which was negotiated by the parties and signed by both parties.

124.    1001 Newark performed under the First Lease Amendment and performed all obligations it was required to under the First Lease Amendment.

125.    1001 Newark attempted to sell the property to a buyer, however, due to the PFAS contamination caused by General Spray, General Spray's slow progress investigating the contamination, and its failure to establish a remediation trust fund that matched the reasonable estimated costs of such remediation, the sale was terminated, causing 1001 Newark actual damages.

126.    The First Lease Amendment further contains a provision for attorney's fees and other expenses incurred by 1001 Newark in enforcing any of the obligations in the First Lease Amendment.

127.    General Spray has breached its contractual duty to 1001 Newark for failing to pay 1001 Newark's attorney's fees and other expenses that it has incurred and will incur in enforcing the First Lease Amendment.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in its favor and against Defendants General Spray as follows:

a.    enter a judgment against General Spray, finding General Spray breached the First Lease Agreement with 1001 Newark by failing to pay 1001 Newark's attorneys' fees and expenses incurred in enforcing the First Lease Agreement; and

b.    enter a judgment against General Spray, finding that General Spray breached its First Lease Agreement by failing to timely conduct the remediation; and

c.    awarding loss of sale damages, Plaintiff interest, costs of this action, including reasonable attorneys' fees to the extent permitted by law for all activities engaged in to enforce the provisions of the First Lease Agreement, and further relief as the Court determines is just, equitable and appropriate.

Dated: January 24, 2025                    Respectfully submitted,


*s/ Eric Tomaszewski*

Eric Tomaszewski
McMANIMON, SCOTLAND & BAUMANN
75 Livingston Avenue
Roseland, NJ 07068
(973) 688-1800
E-Mail: etomaszewski@msbnj.com

*s/ Jessica CM Almeida*

Jessica CM Almeida
McMANIMON, SCOTLAND & BAUMANN
75 Livingston Avenue
Roseland, NJ 07068
(973) 688-1800
E-Mail: jalmeida@msbnj.com

## <u>CERTIFICATION PURSUANT TO L. Civ. R. 11.2</u>

To the best of my knowledge, information, and belief, I certify that the matter in controversy is not the subject of any action pending in any court or of a pending arbitration proceeding in connection with the subject of the action. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: January 24, 2025                    Respectfully submitted,

*s/ Eric Tomaszewski*

Eric Tomaszewski
McMANIMON, SCOTLAND & BAUMANN
75 Livingston Avenue
Roseland, NJ 07068
(973) 688-1800
E-Mail: etomaszewski@msbnj.com

*s/ Jessica CM Almeida*

Jessica CM Almeida
McMANIMON, SCOTLAND & BAUMANN
75 Livingston Avenue
Roseland, NJ 07068
(973) 688-1800
E-Mail: jalmeida@msbnj.com

4923-9345-1792, v. 4